IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | CASE NO. BK05-80059-TJM |
| ACCEPTANCE INSURANCE COMPANIES, INC.) | |
| ) | |
| Debtor(s). ) | CHAPTER 7 |
| GRANITE REINSURANCE COMPANY, LTD., ) | |
| a Barbados corporation, ) | ADV. PROC. NO. A06-8015-TJM |
| ) | (Consolidated) |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ACCEPTANCE INSURANCE COMPANY, ) | |
| a Nebraska corporation, ) | |
| ) | |
| Defendant. ) | |
| ACCEPTANCE INSURANCE COMPANIES, INC.) | |
| ) | ADV. PROC. NO. A06-8115-TJM |
| Plaintiff, ) | (Consolidated) |
| ) | |
| vs. ) | |
| ) | |
| GRANITE REINSURANCE COMPANY, LTD., ) | |
| ) | |
| Defendant. ) | |

ORDER

Hearing was held in Omaha, Nebraska, on November 22, 2010, on Granite Reinsurance Company, Ltd.'s motion for entry of judgment pursuant to mandate (Fil. No. 211) and resistances by the Nebraska Director of Insurance as rehabilitator for Acceptance Insurance Company (Fil. No. 213), Acceptance Insurance Companies, Inc. (Fil. No. 214), the Official Committee of Unsecured Creditors (Fill No. 216), and the Chapter 7 trustee (Fil. No. 221). Robert Craig appeared for Granite Reinsurance Company, Ltd.; Frank Schepers and Lawrence Harr appeared for Acceptance Insurance Company's rehabilitator; and Sam King appeared for Chapter 7 Trustee Richard Myers.

I.    Background

Granite Reinsurance Company, Ltd. ("Granite Re"), a Barbados reinsurer, filed a proof of claim against Acceptance Insurance Companies, Inc. ("AICI"), in its Chapter 11 proceeding[1]

---

[1] The debtor subsequently converted its case to a Chapter 7 on September 7, 2010.

claiming AICI owed it approximately $10.9 million, which was the balance of the premium[2] due under the reinsurance contract plus interest. The debtor objected on the basis that the reinsurance premium was due on an annual basis for coverage received in that year. Because it could no longer issue crop insurance policies, the debtor contended that it no longer needed reinsurance coverage and was not obligated to continue making payments under the contract. Subsequently, Granite Re filed a complaint in the United States District Court for the District of Nebraska against AICI's wholly owned subsidiary, Acceptance Insurance Company ("AIC"), alleging AIC also was liable to Granite Re on the same contract. By consent, the district court transferred Granite Re's proceeding against AIC to this court, which consolidated the proceeding with proceedings in AICI's bankruptcy case as Adversary Proceeding No. A06-8015. AICI thereafter initiated a separate adversary proceeding against Granite Re asserting a claim for unjust enrichment, found at Adversary Proceeding No. A06-8115. AICI asserted the contract lacked consideration, and that Granite Re had been unjustly enriched by the $6 million AICI paid to Granite Re for reinsurance Granite Re did not in fact provide. All issues associated with Granite Re's proof of claim asserted against AICI, Granite Re's adversary complaint against AIC, and AICI's adversary complaint against Granite Re were consolidated for discovery and trial. The bankruptcy court, *inter alia*, denied Granite Re's claim for the $9 million in premiums, reasoning that

> Since the insurance risk being covered by the reinsurer is an annual risk limited to any particular crop year, neither the Acceptance Companies nor Granite Re would have any risk in those years in which crop insurance was not in force. Neither AGIC nor AIC sold or put in place any multi-peril crop insurance for the crop years 2003, 2004, and 2005. No premiums were due for those years because no risk of loss was reinsured for those years.

Memorandum of May 9, 2007, at 9 (Fil. No. 180).

On appeal, the Eighth Circuit's Bankruptcy Appellate Panel reversed that ruling, finding the reinsurance contract to unambiguously state that its term was five years and its premium was $15 million payable over five years. The Acceptance entities "have the option of paying the contract premium in installments, but are not required to do so. The contract does not indicate that the installment payments are yearly renewal premiums or that the debtor may opt out of the contract to avoid paying any of the installments." Opinion of Mar. 12, 2008, at 11 (Fil. No. 195).

The Eighth Circuit Court of Appeals affirmed that ruling, finding as follows:

> While the Reinsurance Contract permitted Appellants to pay the $15 million premium in deposit payments on specified dates, the Contract had a definite term of

---

[2]The AICI entities agreed to pay Granite Re a premium totaling $15 million for the reinsurance policy, consisting of an initial $6 million payment for coverage for the 2001 and 2002 crop years, and $3 million due on January 1 of each of the following three years. None of those $3 million payments was ever made.

> five years from July 1, 2000, to June 30, 2005, with a definite liability limit of $40 million over those five years. The Reinsurance Contract had no provision for early termination; thus, this was not a renewable contract where Appellants had the option to terminate after one year or two years. The parties unequivocally agreed to five years of reinsurance coverage up to a cumulative $40 million. Additionally, the Reinsurance Contract explicitly states the payments due on January 1 of 2003, 2004, and 2005 were only minimum deposits. This further convinces us Appellants are incorrect in their assertion that Appellants were only required to pay the 2003, 2004, and 2005 deposits if American Growers were writing insurance during those years.

Opinion of May 18, 2009, at 19 (Fil. No. 209).

II.    Issues

After the Circuit Court's opinion became final, Granite Re moved for entry of judgment in its favor in accordance with the appellate decision. It requested allowance of its claim in the principal amount of $9 million, plus pre-judgment interest at the contract rate of 1.5 percent per month from January 1, 2003, through entry of the B.A.P. judgment on March 14, 2008, plus post-judgment interest at the contract rate of 1.5 percent per month from March 14, 2008, through July 31, 2010, and per diem interest at the contract rate thereafter. The motion attracted opposition based on its request for interest.[3] With regard to the matter of pre-judgment interest, the questions are: First, when does interest at the contractual rate begin to accrue? Is it on January 1, 2003, when the first of the three installment payments were due? Is it on May 5, 2003, when Acceptance allegedly repudiated the contract? Is it on the due dates for each of the payments? Second, what is the appropriate post-judgment interest rate? Is it the contractual rate or the federal statutory rate?

    A.    Pre-judgment interest

The contractual interest rate on each of the $3 million installment payments commences as of the date each payment was due.

The Iowa statutory rate of interest contains an exception for rates agreed to in writing by the parties. Iowa Code § 535.2. In the reinsurance contract, Granite Re and Acceptance agreed to an interest rate of 1.5 percent per month. Accordingly, that contractual rate is the applicable rate here.

Acceptance did not make the January 1, 2003, premium installment payment. On May 5, 2003, Acceptance Companies' president and chief executive officer wrote a letter to a Granite Re representative explaining the reasons for the company's dire financial position and its inability to make premium payments to Granite Re beyond the $6 million previously paid. The letter characterized premiums for Granite Re's unnecessary insurance protection (unnecessary because

---

[3] To the extent Granite Re's motion could be interpreted as requesting compound interest, Granite Re's counsel clarified at the hearing that compound interest is not an issue.

Acceptance was no longer in the crop insurance business) as "pure windfall to Granite." In addition, the letter stated that "no further premium is or will become due to Granite." Martin Letter of May 5, 2003 (Fil. No. 222).

Granite Re describes this as a repudiation of the contract, constituting a total breach and justifying the calculation of interest on the 2004 and 2005 premiums from that date. "'[R]epudiation consists of a statement that the repudiating party cannot or will not perform.' . . . 'The statement must be sufficiently positive to be reasonably understood . . . that the breach will actually occur.'" Conrad Bros. v. John Deere Ins. Co., 640 N.W.2d 231, 241 (Iowa 2001) (quoting II E. Allan Farnsworth, Farnsworth on Contracts § 8.21, at 535 (2d ed.1998)). By that definition, the May 5th letter is a repudiation because Acceptance clearly states that it will not pay any further premiums to Granite Re. However, the repudiation does not render the future payments due and owing as of that date.

The status of the parties' respective duties under the contract at issue here brings it within § 243(3) of the Restatement (Second) of Contracts, "Effect of a Breach by Non-Performance as Giving Rise to a Claim for Damages for Total Breach."[4] Specifically, subsection 3 states that a breach by non-performance when the breaching party is the only one with remaining duties to perform, in the form of installment payments, does not give rise to a claim for damages for total breach.

> It is well established that if those duties of the party in breach at the time of the breach are simply to pay money in installments, not related to one another in some way, as by the requirement of the occurrence of a condition with respect to more than one of them, then a breach as to any number less than the whole of such installments gives rise to a claim merely for damages for partial breach.

Restatement (Second) of Contracts § 243, cmt. c.

The applicability of this subsection is demonstrated in the Restatement's illustration 4:

> Illustrations:
> 4. A borrows $10,000 from B and promises to repay with interest in ten monthly installments. A unjustifiably fails to pay the first four installments. B has a

---

[4]§ 243. Effect Of A Breach By Non-Performance As Giving Rise To A Claim For Damages For Total Breach

. . .

(3) Where at the time of the breach the only remaining duties of performance are those of the party in breach and are for the payment of money in installments not related to one another, his breach by non-performance as to less than the whole, whether or not accompanied or followed by a repudiation, does not give rise to a claim for damages for total breach.

>claim against A merely for damages for partial breach for non-payment of the four unpaid installments. The result is the same even if A repudiates by telling B that he will not make the payments.

Id., cmt. d, illus. 4.

The Eighth Circuit opinion in this case makes clear that Acceptance was to pay the full amount of the premium for $40 million in reinsurance coverage. Granite Re provided the coverage regardless of whether Acceptance was able to use it, so the only performance remaining at the time of the repudiation was Acceptance's installment payments of the rest of the premium. This is distinguishable from the facts of Pavone v. Kirke, Case No. 09-0222, 2009 WL 4114141 (Iowa Ct. App. Nov. 25, 2009), a case on which Granite Re relies.

In Pavone, the parties entered into an agreement whereby Pavone and his management company would assist Kirke in obtaining casino licenses from the Iowa Racing and Gaming Commission. If the applications were successful, Kirke's company would own the casinos and Pavone's company would manage them. Kirke was awarded two licenses, for casinos in Clinton and Emmetsburg. After obtaining the Emmetsburg license but before obtaining the Clinton license, the parties' relationship deteriorated and Kirke repudiated the agreement. Pavone filed a lawsuit seeking damages for breach of the agreement as to the Emmetsburg facility. After that case had been tried, Pavone filed a second breach of contract lawsuit as to the Clinton facility. The trial court granted summary judgment to Kirke in that action, ruling that Pavone had improperly split his single cause of action by filing separate complaints for each casino. The court of appeals affirmed, identifying Iowa law in Conrad Bros., supra, and older cases to the effect that a breach by non-performance, in concert with a repudiation, gives rise to damages for a total breach of the contract. 2009 WL 4114141, at *3-4. However, the court noted the exceptions to this rule. One of those exceptions is where the only remaining duties of performance are those of the party in breach. In Pavone, both parties were obligated to perform under the contract at the time it was repudiated. Another exception, inapplicable in both Pavone and the present case, is where the parties have agreed that the repudiator's performance will be continued. The third exception, upon which Pavone was decided, was the indivisibility of the contract.

Because the exception for unilateral performance exists and is applicable on the facts of this case, the repudiation did not accelerate the 2004 and 2005 premium payments. Accordingly, Granite Re is entitled to interest on each of the three premium payments from each payment's due date.

B.      Post-judgment interest

The proper interest rate to be applied is the federal statutory rate at 28 U.S.C. § 1961.[5] The

---

[5]§ 1961. Interest

>(a) Interest shall be allowed on any money judgment in a civil case recovered

Eighth Circuit Court of Appeals has made clear that when an action in federal court is otherwise governed by state law, the federal statutory rate governs post-judgment interest. Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co., 933 F.2d 1433, 1435-36 (8th Cir. 1991) ("In a diversity action, state law governs prejudgment interest; federal law governs postjudgment interest.") (citing Todd Farm Corp. v. Navistar Int'l Corp., 835 F.2d 1253, 1257 (8th Cir. 1987) and Weitz Co., Inc. v. Mo-Kan Carpet, Inc., 723 F.2d 1382, 1385-86 (8th Cir. 1983) (per curiam) ("This court must apply an applicable federal provision over a conflicting state provision[.]")); Pester Ref. Co. v. Ethyl Corp. (In re Pester Ref. Co.), 964 F.2d 842, 849 (8th Cir. 1992) ("[E]ven in a non-bankruptcy context, we have held that federal law governs whether post-judgment interest is awarded on a judgment in an action otherwise governed by state law. . . . Under federal law, 'interest shall be allowed on any money judgment in a civil case recovered in a district court.' 28 U.S.C. § 1961. Because a bankruptcy court is part of the district court, the statute applies to bankruptcy proceedings."); Maddox v. Am. Airlines, Inc., 298 F.3d 694, 699-700 (8th Cir. 2002) ("We have specifically held that, unless a case is expressly exempt from the scope of this statute, the federal postjudgment interest rate applies to cases adjudicated in federal court, regardless of whether the basis for jurisdiction was federal question or diversity."). Cases in other circuits have held that the parties may agree to a rate of interest other than that in 28 U.S.C. § 1961, see, e.g., BP Prod. N. Am., Inc. v. Youssef, 296 F. Supp. 2d 1351 (M.D. Fla. 2004) and Horizon Holdings, L.L.C. v. Genmar

---

in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. [sic] the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

(b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.

(c)(1) This section shall not apply in any judgment of any court with respect to any internal revenue tax case. Interest shall be allowed in such cases at the underpayment rate or overpayment rate (whichever is appropriate) established under section 6621 of the Internal Revenue Code of 1986.

(2) Except as otherwise provided in paragraph (1) of this subsection, interest shall be allowed on all final judgments against the United States in the United States Court of Appeals for the Federal circuit [sic], at the rate provided in subsection (a) and as provided in subsection (b).

(3) Interest shall be allowed, computed, and paid on judgments of the United States Court of Federal Claims only as provided in paragraph (1) of this subsection or in any other provision of law.

(4) This section shall not be construed to affect the interest on any judgment of any court not specified in this section.

Case 06-08015-TJM    Doc 230    Filed 01/20/11    Entered 01/20/11 07:55:51    Desc Main
                  Document      Page 7 of 7

Holdings, Inc., 244 F. Supp. 2d 1250 (D. Kan. 2003), but the Eighth Circuit has not demonstrated an inclination to adopt that proposition.

III.    Conclusion

Granite Re is entitled to payment on its claim for $9 million in premium payments. It is entitled to pre-judgment interest at the contract rate from the date each payment was due. In other words, interest should be paid on the 2003 payment from January 1, 2003, through March 14, 2008. Interest should be paid on the 2004 payment from January 1, 2004, through March 14, 2008. Interest should be paid on the 2005 payment from January 1, 2005, through March 14, 2008. Granite Re is also entitled to post-judgment interest at the rate specified under 28 U.S.C. § 1961 from March 15, 2008, until paid.

IT IS ORDERED: Granite Reinsurance Company, Ltd.'s motion for entry of judgment pursuant to mandate (Fil. No. 211) is granted as modified by this order. The parties are asked to confer and agree on the interest rates on the various components and prepare a judgment entry that includes the principal and accrued interest to a date certain and interest at a per diem amount thereafter. If the parties cannot agree, they may submit separate proposed judgments with an explanation of how they arrived at the figures contained therein.

DATED:    January 19, 2011

BY THE COURT:

 /s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *Robert Craig
    Frank Schepers
    Lawrence Harr
    J.P. (Sam) King
    U.S. Trustee

Movant (*) is responsible for giving notice of this order to parties not listed above if required by rule or statute.